UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

FABIAN SILVA through THERESA
ABEYTA, his Legal Guardian and
Conservator,

       Plaintiff,

v.                                No. 16-cv-488 JCH/KK

SYLVIA MATHEWS BURWELL, in her
official capacity as SECRETARY OF THE
U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, CENTER FOR
MEDICARE & MEDICAID SERVICES,
and U.S. DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

       Defendants.

## MEMORANDUM OPINION AND ORDER

On September 6, 2016, Defendants filed a Motion to Dismiss and Memorandum in Support (ECF No. 8), arguing that the Court lacks subject matter jurisdiction and the case must be dismissed under Federal Rule of Civil Procedure 12(b)(1). The Court, having considered the motion, complaint, arguments, and relevant law, concludes the motion should be granted.

    **I.**     **FACTUAL AND PROCEDURAL BACKGROUND**

In 2011, Plaintiff Fabian Silva was injured as a result of a medical malpractice incident, leaving him with severe, permanent brain damage and debilitating physical problems. Am. Compl. ¶ 8, ECF No. 3. Plaintiff filed suit in state court against the hospital and physicians who provided him medical treatment, and the case was settled by agreement of the parties in December 2015. *Id.* ¶ 9.

Because Medicare paid for some of Plaintiff's medical expenses arising from the

incident, Medicare had a claim for payment with regard to the past medical care, according to the Medicare Secondary Payer Act ("MSP"), 42 U.S.C. § 1395y(b). *See* Am. Compl. ¶ 10. Plaintiff paid Medicare's claim in full. *Id.* At the time this suit was filed, Secretary Sylvia Mathews Burwell, the Secretary of the United States Department of Health and Human Services ("the Secretary"), was responsible for implementing the Medicare program, and she administered the Medicare program through the Center for Medicare and Medicaid Services ("CMS"), an agency of the United States Department of Health and Human Services ("HHS"). *Id.* ¶ 2.[1]

The defendants in the malpractice case ("Hospital Defendants") assert that Mr. Silva must create a Medicare "set-aside" ("MSA") from the settlement funds for future medical expenses because of a concern that Medicare could come back after the Hospital Defendants for future medical expenses. *Id.* ¶ 11. The concern arises because the CMS has promulgated regulations for set-aside arrangements in workers' compensation cases when "the settlement agreement allocates certain amounts for specific future medical services." 42 C.F.R. § 411.46(d)(2). *See also* Am. Compl. ¶¶ 16-17. CMS issued guidelines for the use and approval of MSAs in workers' compensation cases through a series of policy memoranda. Am. Compl. ¶ 18.

Mr. Silva asserts that there is no legal support for Medicare to request a "set-aside" in his case, because the guidelines relate to workers' compensation settlements and do not extend to liability or personal injury settlements. *See id.* ¶¶ 12, 18. Plaintiff asked CMS to state its position as to whether funds must be "set-aside" from the settlement of a personal injury claim to cover

---

[1] According to the HHS website, Eric D. Hargan is the Acting Secretary and Deputy Secretary of HHS. U.S. Department of Health & Human Services, https://www.hhs.gov/about/leadership/secretary/index.html (last visited Nov. 20, 2017). Although no party has raised the issue, according to Federal Rule of Civil Procedure 25, when an action against a public officer in an official capacity ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party, and later proceedings should be in the substituted party's name. Fed. R. Civ. P. 25. To avoid confusion herein, the Court will refer to Defendant HHS Secretary as "the Secretary."

unknown, unspecific future medical expenses. *Id.* ¶ 12. CMS has not responded and has refused to take a position regarding (1) the legal basis of their claim for repayment or future medical care, and (2) whether a "set-aside" is required with respect to Mr. Silva's future medical care. *Id.* ¶¶ 12-13.

To protect all parties, the Hospital Defendants have agreed that they would release the money in trust to Mr. Silva's Trustee for his health and welfare if Plaintiff obtains a federal court order containing a finding that no federal law or CMS regulation requires the creation of a Medicare "set-aside" from Mr. Silva's personal injury settlement. *Id.* ¶ 14. During the state-court approval of the settlement, it was determined that a certain amount of the settlement would be kept in trust to meet any Medicare "set-aside," while Plaintiffs pursued the instant federal court action. *Id.* ¶ 15.

Consequently, Plaintiff filed suit under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), the federal question statute, 28 U.S.C. § 1331, the Mandamus Act, 28 U.S.C. § 1361, and the MSP, 42 U.S.C. § 1395y(b), against the Defendants in this case ("Federal Defendants"), seeking a declaration that no "set-aside" is required in Plaintiff's state court settlement to pay for his future medical expenses, that Defendant CMS may not in the future decrease or refuse to pay for medical bills Mr. Silva may incur or otherwise penalize Mr. Silva or his trust, and that MSAs are not required under the law for personal injury or medical malpractice damages. *See id.* ¶¶ 3-4, 16-25. The Federal Defendants filed a motion to dismiss for lack of subject matter jurisdiction arguing that (i) there is no justiciable case or controversy because the Secretary has no duty under the law to take a position on the controversy; (ii) the United States is immune from suit; and (iii) Plaintiff has failed to exhaust his administrative remedies under the Medicare Act.

## II. LAW REGARDING THE MSP AND MEDICAL SET-ASIDE AGREEMENTS

In enacting the MSP, Congress sought to reduce skyrocketing Medicare costs by making the government a secondary provider of medical insurance coverage when a beneficiary has other sources of primary insurance coverage. *Thompson v. Goetzmann*, 337 F.3d 489, 495 (5th Cir. 2003); *Zinman v. Shalala*, 67 F.3d 841, 843 (9th Cir. 1995). Under the MSP, "when a Medicare beneficiary suffers an injury covered by a group health plan or liability, workers' compensation, automobile, or no-fault insurance, Medicare conditionally pays for the beneficiary's medical expenses." *Zinman*, 67 F.3d at 843 (citing 42 U.S.C. § 1395y(b)(2)(B)(i)). The MSP also provides the government a cause of action in reimbursement to recover conditional healthcare payments from primary plans. *Id.* (citing 42 U.S.C. § 1395y(b)(2)(B)(ii)). A tortfeasor's liability insurance company may constitute a primary plan under the MSP triggering Medicare's right to reimbursement when it pays out settlement proceeds to a Medicare beneficiary arising from a personal injury claim that includes reimbursement for medical expenses incurred from the incident and paid by Medicare. *See Humana Medical Plan, Inc. v. Western Heritage Ins. Co.*, 832 F.3d 1229, 1234, 1239 (11th Cir. 2016).

In workers compensation cases, the CMS promulgated regulations requiring the creation of a Medicare "set aside" account. *See* 42 C.F.R. § 411.46(d)(2). The MSA allocates a portion of a workers' compensation award to pay potential future medical expenses resulting from the work-related injury so that Medicare does not have to pay. *Aranki v. Burwell*, 151 F.Supp.3d 1038, 1040 (D. Ariz. 2015). On June 15, 2012, CMS published notice of proposed rulemaking on options to clarify how beneficiaries can meet their obligations to protect Medicare's interest under the MSP for claims involving liability insurance when future medical care may occur or the settlement or judgment releases claims for future medical care. Medicare Program; Medicare Secondary Payer and "Future Medicals," 77 Fed. Reg. 35917-02, 35918 (June 15, 2012). The

4

notice stated that, unlike in certain workers' compensation situations where Medicare has an MSA review process to determine if a proposed set-aside amount is sufficient to meet obligations related to future medical expenses, to date, Medicare has not established a similar process for MSP obligations regarding future medicals in liability insurance situations. *See id.* at 35919. The CMS did not create a process through any subsequent action following the Notice. *See Aranki*, 151 F.Supp.3d at 1040 n.1.

### III. STANDARD

When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must accept the complaint's factual allegations as true. *Wyoming v. United States*, 279 F.3d 1214, 1222 (10th Cir. 2002).

### IV. ANALYSIS

Under Article III of the United States Constitution, a court has jurisdiction to decide cases or controversies, and the "case-or-controversy requirement is satisfied only where a plaintiff has standing." *Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1298 (10th Cir. 2008) (quoting *Sprint Communications Co. v. APCC Servs., Inc.*, 554 U.S. 269, 128 S.Ct. 2531, 2535 (2008)). Likewise, the Declaratory Judgment Act applies only to "a case of actual controversy." 28 U.S.C. § 2201(a). A "party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy." *Cardinal Chem. Co. v. Morton Intern., Inc.*, 508 U.S. 83, 95 (1993). To establish standing, a plaintiff must show (1) an injury in fact that is concrete and particularized as well as actual or imminent, (2) a causal relationship between the injury and the challenged conduct; and (3) likelihood that the injury would be redressed by a favorable decision. *Protocols*, 549 F.3d at 1298. Contingent liability can constitute an injury-in-fact so long as there is an actual or imminent present impact. *See id.* at 1300-01. Ripeness also bears on

a court's subject matter jurisdiction. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498-99 (10th Cir. 1995). Ripeness is a question of timing, requiring the party invoking jurisdiction to show that the issue is fit for judicial resolution and that the parties will suffer hardship from withholding judicial consideration. *Id.* at 1499.

The *Protocols* case is instructive in its differences. The plaintiff ("Protocols") was a company that provided consulting services for the settlement of workers' compensation claims, and it typically received a fee from the settlement proceeds. *Protocols*, 549 F.3d at 1295-96. In 2005, CMS issued a memorandum ("the 2005 Memo") declaring that 42 C.F.R. § 411.47 only applied to medical expenses incurred before a workers' compensation settlement, an interpretation at odds with how the plaintiff in the past had structured its settlements by following § 411.47 for settlements involving future medical benefits as well. *See id.* at 1296-97. The plaintiff sued the Secretary of HHS and the acting administrator of CMS for, among other things, a declaratory judgment that the 2005 Memo was invalid because it conflicted with the MSP and § 411.47 and that § 411.47 provided a valid method for structuring settlements to account for future medical expenses. *Id.* at 1297. The district court granted summary judgment to Defendants on the ground that the plaintiff lacked standing under Article III. *Id.* at 1298.

The Tenth Circuit disagreed, determining that the following facts created an injury-in-fact:

> Liability of Protocols could therefore result as follows: When CMS refuses to recognize a settlement, the settlement does not relieve the workers' compensation insurer of the obligation to pay postsettlement medical expenses that would otherwise be covered by workers' compensation. If Medicare pays for such an expense, it would then be entitled to reimbursement (and could sue to collect) from anyone who received part of the settlement paid by the insurer. Because Protocols received consulting fees out of the settlement payment, it could be liable to repay that sum. Protocols will not know whether it has a liability, however, until Medicare pays a postsettlement medical expense and then decides to seek reimbursement from Protocols. According to affidavits submitted by

> Protocols, this potential (contingent) liability hanging over it hampers its business in several ways: (1) the company's value is decreased because of contingent liabilities; (2) the uncertainty of the liability harms Protocols' ability to plan how much revenue it may use for capital and operating costs; and (3) the company has postponed discussions with potential investors while awaiting the outcome of this lawsuit, because potential investors want to know about contingent liabilities.

*Id.* at 1299.

The Tenth Circuit concluded that Protocols suffered an actual injury because it arranged settlements in the past contrary to what CMS declared to be required, and as a result, CMS may in the future demand reimbursement from Protocols' portion of settlement proceeds. *Id.* at 1301. Protocols had shown through affidavits that the potential liability was adversely affecting its financial health presently. *See id.* at 1299. The Tenth Circuit also determined Protocols satisfied the other two elements of standing because "Protocols' contingent liability is caused by CMS's interpretation of the Medicare Secondary Payer statute and the regulations under that law. And a favorable decision by the court in this case would resolve that Protocols' past practice conforms to Medicare law, so Protocols would no longer be facing possible (contingent) liability." *Id.* at 1301.

Unlike in *Protocols*, Plaintiff here has not shown that CMS has taken a position contrary to Plaintiff's interpretation of the MSP. In *Protocols*, CMS issued the 2005 Memo that set forth a contrary interpretation of the MSP and regulations from Protocols' past practice and interpretation. The Federal Defendants in this case, however, have not stated a position or interpretation of the MSP that is imposing the contingent liability. Importantly, "no federal law or CMS regulation [currently] requires the creation of a MSA in personal injury settlements to cover potential future medical expenses." *Aranki*, 151 F.Supp.3d at 1040. *See also Sipler v. Trans Am Trucking, Inc.*, 881 F.Supp.2d 635, 638 (D.N.J. 2012) ("no federal law requires set-aside arrangements in personal injury settlements for future medical expenses"). The Hospital

Defendants, leery of being subject to a later suit by CMS for failing to create a MSA, in an abundance of caution, want confirmation of whether they need to create a MSA before completing the settlement. The Federal Defendants, however, have not taken any act to indicate that they are interpreting the MSP to require MSAs in non-workers compensation personal injury cases. Nor has Plaintiff shown that CMS has sought to recover funds not placed in an MSA in other similar personal injury settlements. *Cf. Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006) (holding that, where plaintiff violated statute but was not threatened with prosecution and district attorney stated he did not intend to prosecute plaintiff, plaintiff's mere fearfulness of future prosecution was insufficient to support standing because there was no credible threat of prosecution). Plaintiff has thus not shown that the Federal Defendants are likely to seek reimbursement from either Plaintiff or the Hospital Defendants if they do not create an MSA. *Cf. Bronson v. Swensen*, 500 F.3d 1099, 1107-10 (10th Cir. 2007) (stating that, to have standing to challenge law due to threat of prosecution, plaintiff must show credible threat of prosecution and substantial likelihood that the defendant's conduct caused plaintiff's injury in fact).

Moreover, Plaintiff has not convinced the Court that the Federal Defendants have a duty or obligation in law to respond to Plaintiff's request for a determination of whether a MSA must be created in his case. Under 28 U.S.C. § 1361, district courts have jurisdiction of any mandamus action "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. There is no law or regulation currently in place that requires the CMS to decide whether Plaintiff is required to create a MSA for personal injury settlements. *Cf. Cribb v. Sulzer Metco (US) Inc.*, Civ. Action No. 4:09-CV-141-FL, 2012 WL 4787462, at *2 (E.D.N.C. Sept. 5, 2012) ("... CMS provides no other procedure by which to determine the adequacy of protecting Medicare's interests for future medical needs and/or

expenses in conjunction with the settlement of third-party claims ….."). The Federal Defendants' inaction thus does not make the case ripe for consideration. *Cf. Winsness*, 433 F.3d at 733 (holding that plaintiff had not shown credible threat of prosecution to satisfy standing, even though before filing lawsuit district attorney failed to respond to plaintiff's requests for assurances of non-prosecution; the inaction was "of no moment" because there "is no federal right to obtain advisory opinions from local prosecutors").

The Court shares the *Sipler* court's concern that "to require personal injury settlements to specifically apportion future medical expenses would prove burdensome to the settlement process and, in turn, discourage personal injury settlements." *Sipler*, 881 F.Supp.2d at 638. The uncertainty created by CMS's repeated failure to clarify its position on requiring MSAs in personal injury settlements generally and in specific cases is also proving burdensome to the settlement process. Nevertheless, standing is a jurisdictional requirement, and Plaintiff has not met his burden to establish a justiciable controversy ripe for review. *Cf. Aranki*, 151 F.Supp.3d at 1042 ("This case is not ripe for review because no federal law mandates CMS to decide whether Plaintiff is required to create a MSA. That CMS has not responded to Plaintiff's petitions on the issue, is not reason enough for this Court to step in and determine the propriety of its actions. There may be a day when CMS requires the creation of MSA's in personal injury cases, but that day has not arrived.").[2]

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss and Memorandum in Support (**ECF No. 8**) is **GRANTED** and this case is **DISMISSED** for lack of subject matter jurisdiction.

_____
**UNITED STATES DISTRICT JUDGE**

---

[2] In light of the Court's decision that it lacks subject matter jurisdiction based on lack of standing and ripeness, the Court need not consider the Federal Defendants' alternative arguments that it is immune from suit.